**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-cv-00514-WDM-CBS

WBS CONNECT, LLC, a Colorado limited liability company,

    Plaintiff,

v.

ONE STEP CONSULTING, INC., a New York corporation,
CHARLES GUCKER, an individual, and
CHRISTOPHER ZYDEL, an individual,

    Defendants.

_____

**STIPULATED ORDER AND ADDENDUM TO SCHEDULING ORDER
ESTABLISHING PROTOCOL FOR ELECTRONIC DISCOVERY**
_____

Pursuant to the Court's Minute Order, dated May 2, 2007 (Doc. # 22), the Parties submit this Addendum to the Scheduling Order Establishing Protocol for Electronic Discovery.

**A. Scope**

1.     <u>General</u>. Except as specifically limited herein, the procedures and protocols outlined herein govern the parties' production of Discoverable Electronic Information (as defined below) during the pendency of this litigation.

2.     <u>Paper Document Collections</u>. If any responsive documents are maintained in paper form only (non-electronic form), each producing party reserves the right to offer for review those paper documents and to produce paper document collections in paper format. If, for purposes of production, a producing party converts collections of paper documents to electronic documents, such documents shall be produced in PDF format pursuant to this

Protocol. However, nothing herein limits the right of a requesting party to request the production of paper documents in PDF format.

3. <u>Discoverable Electronic Information</u>. As used in this order, the term Discoverable Electronic Information means discoverable documents and data existing in electronic form consistent with Fed.R.Civ.P. 34(a), including by way of example and not by way of limitation (where relevant and not privileged) e-mail, calendars, word processing documents, spreadsheets, electronic slide presentations, databases, and other electronic data items containing information relevant to the claim(s) or defense(s) of any party or, upon a showing of good cause, information relevant to the subject matter involved in the action.  If a responding party ordinarily maintains the Discoverable Electronic Information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a way that removes or significantly degrades this feature.

4. <u>Parties</u>. As used in this order, the term "parties" means each party to this action, namely, plaintiff, WBS Connect, LLC, and defendants, One Step Consulting, Inc., Charles Gucker and Christopher Zydel.

5. <u>Limitations</u>. This Protocol does not establish any agreement as to either the temporal or subject matter scope of discovery. This Protocol provides a general framework for the production of Discoverable Electronic Information.

6. <u>Definitions</u>. Except as otherwise defined herein, all terms are defined pursuant to *The Sedona Conference Glossary: E Discovery and Digital Information Management* (May, 2005 Version) available at http://www.thesedonaconference.org/.

### B. Exchange of Each Party's Basic Information System Data

On May 9, 2007, the parties and their respective representatives including, legal

counsel, participated in a telephone conference to discuss electronic discovery issues and protocol. The parties and their respective representatives who participated in that conference are as follows:

A. For the Plaintiff:

Scott Charter, Michael Hollander, Andrew M. Schauer, Esq. and Dana B. Baggs, Esq.

B. For the Defendants:

Charles Gucker and Lynn M. Brown, Esq.

During the conference, the parties exchanged information concerning their computer information systems and computer applications and the locations of Discoverable Electronic Information. Further, in order to promote communication and cooperation between the parties, the parties have designated the following individuals and their e-discovery liaisons:

Plaintiff: Danny Kim

Defendants: Charles Gucker/Chris Zydel

### C.  Identification of Responsive Data, Backup Data and Archival Data

1. Discoverable Electronic Information shall be produced in accordance with the discovery deadlines in Section 8 of the Scheduling Order (Doc. # 23 in the Colorado action), any Scheduling Order entered in the action between the parties in the Eastern District of New York, and the Federal Rules of Civil Procedure.

2. The parties have met and conferred, in good faith, to identify to what extent Archival Data or Backup Data may be responsive to any requests. With the exception of back-up tapes for WBS' exchange server, the parties' current and archival data are maintained on hard drives   If a response to a request for production of

Discoverable Electronic Information made by a party to this action would entail restoration of Backup Data, prior to restoration, the producing party shall provide the requesting party with a description of responsive, readily available Backup Data. Thereafter, the parties shall meet and confer to determine whether the production request can be satisfied without the necessity of restoring data from Backup Data or be limited in scope. If Backup Data is selected for restoration, the parties shall endeavor to avoid the unnecessary restoration of duplicate or non-responsive data. However, no party is required to reduplicate or remove redundant data. In addition, as part of the meet and confer process contemplated herein, the parties shall discuss cost-sharing or equitable division of the costs for any restoration Backup Data.

### D. General Provisions

1. **Electronic Mail and Instant Messaging Production Format**. If Discoverable Electronic Information includes electronic mail or instant messaging files, the producing party shall produce such information in a suitable data file format that may be imported into to a mail client or messaging application by the receiving party. The parties agree that they will work together to resolve any issues that may be associated with exporting or importing any data files. In addition to producing data files, the producing party may, at its choosing, produce electronic mail or instant messages in PDF format. If a party produces electronic mail or instant messages in PDF format, the documents shall be produced pursuant to the procedures described in Paragraph D.2., Document Production Format.

2. **Document Production Format**. The following provisions shall generally govern the production format and procedure for Discoverable Electronic Information.

4

      a.    <u>Format</u>. All Discoverable Electronic Information shall be saved electronically in native format. "Native Format" means the associated file structure of electronic documents that is defined by the original creating application (for example, Microsoft Office applications, including Word, Excel, Powerpoint, etc.). If the requesting party specifies a format for the production of Discoverable Electronic Information that the responding party believes is burdensome or otherwise objectionable, the responding party may object to the requested format in accord with Fed.R.Civ.P. 34(b). Notwithstanding such objection to the format for the production, the producing party shall produce responsive documents pursuant to the procedures required by Fed.R.Civ.P. 34(b) and this Protocol. If a requesting party does not specify the format in which Discoverable Electronic Information is to be produced, such information may be saved and produced in native format or PDF format, at the producing party's option (without alteration to the content of the metadata, except as contemplated in Section D.3.a. of this protocol addressing System Metadata and incidental alterations of metadata as the result of production). Any native format or PDF format document shall not be manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Further, no document shall be manipulated prior to being converted into a PDF format, except as may be required by this Protocol<u>.</u> If documents are produced in PDF format and, subsequently it is requested, such documents may be produced in native format pursuant to the procedures described in Paragraph D.3., Native Format. All requests shall be made in good faith.

      b.    <u>Appearance</u>. Subject to appropriate redaction, each document's electronic image shall convey the same information and image as the original document.

Documents that present imaging or formatting problems shall be promptly identified; the parties shall meet and confer in an attempt to resolve the problems.

    c.    <u>Document Unitization</u>. If a document is more than one page, to the extent possible, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file or computer of the producing party.

    d.    <u>Document Numbering – General</u>.  Each page of a produced document produced in PDF format shall have a legible, unique page identifier (Document Number) electronically "burned," onto the image at a location that does not obliterate, conceal or interfere with any information from the source document. In the case of confidential materials or materials redacted in accordance with applicable law or Court order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

    e.    <u>Document Numbering Conventions</u>. Each document image file shall be named with a unique Document Number for each page produced in PDF format. The Document Number for each page of each document shall be created so as to identify the producing party and the document number.  Documents produced by WBS Connect, LLC shall use the prefix "WBS."  Documents produced by One Step Consulting, Inc.  shall use the prefix "OSC."   Each page of each production shall have a unique number.  If a document is produced subject to a claim of protection pursuant to a Stipulation and Protective Order Governing the Production and Exchange of Confidential Information or otherwise pursuant to Order of the Court, the word "CONFIDENTIAL" or "'CONFIDENTIAL – ATTORNEYS' EYES ONLY'" (or other descriptive identifier as may be agreed upon by the parties or ordered by the Court) shall be burned electronically

on each page of such document. The document numbering convention for each page of each document image is as follows:

> Party and Production Number. The Confidentiality stamp may appear elsewhere on the document and shall not obstruct written or graphic material. An example of WBS's production of a page that is the 235th sequentially produced page of all documents produced and contains "'Confidential"' information would be**:** "'WBS 000235"' The word Confidential will be burned to the document at a location that does not obstruct written or graphic material.

    f.  <u>Production Media</u>. The producing party shall produce documents on readily accessible, computer or electronic media, including CD-ROM, DVD, jump drive, external hard drive (with standard PC compatible interface), (the "'Production Media "'). Each piece of Production Media should be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media (e.g., "WBS Production Sept. 15, 2003") as well as the sequence of the material in that production (e.g. "-00001", "-00002"'). For example, if the production comprises document images on three DVDs, the producing party may label each DVD in the following manner "WBS Production Sept. 15, 2005-00001", WBS Production Sept. 15, 2005-00002", WBS Production Sept. 15 2005-0003." Additional information that should be identified on the physical Production Media includes: (1) text referencing that it was produced in *WBS Connect, LLC v. One Step Consulting, Inc., et al.,* United States District Court for the District of Colorado, Civil Action No. 07-cv-00524-WDM-CBS and *One Step Consulting , Inc., et al. v. WBS Connect, LLC,* United District Court for the Eastern District of New York, CV 07-1128-JS-AKT (2) the Document Number range of the materials contained on the Production Media. To the extent any replacement Production Media is required, that replacement media shall indicate that it is a replacement and identify the Document Number range that is being replaced.

  g. <u>Write Protection and Preservation</u>. All computer media that is capable of write protection should be write-protected before production.

  3. **Native File Format Production.** Subject to Paragraph D.2. of this Protocol, if documents are produced in PDF format, those documents need only be produced in native format upon request of the receiving party and agreement of the producing party, which agreement shall not be unreasonably withheld. Upon reasonable request from the receiving party, the producing party shall make available to the receiving party the original file, in native format, for any document or document production in accordance with Paragraph 2 of this Section.

  a. <u>Original Documents</u>. The producing party shall retain native electronic source documents for all electronic documents produced in this proceeding regardless of the format in which it is produced. The producing party shall maintain the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of production in the event review of such metadata becomes necessary (The parties understand that producing the metadata may effect some changes in metadata. A change in System Metadata (as that term is defined in Section 11.B. of the United States District Court for the District of Maryland Suggested Protocol for Discovery of Electronically Stored Information) incident to production to the requesting party is permissible. The parties do not intend to alter the manner in which documents are maintained in the ordinary course nor do they intend to authorize spoliation, by recognition of the possible impact of incidental alteration of metadata as the result of production.) Subject to preservation of appropriate privileges and other protections of information from production in accordance with applicable law,

the producing party shall, upon reasonable request, make originals of any produced document available for inspection by the requesting party in the form in which such documents are kept in the ordinary course of business. Native files required or agreed to be produced hereunder shall be provided on read-only media or other media mutually agreeable by the parties and shall be assigned a production number corresponding to the production number assigned originally with an appropriate suffix; where appropriate, the parties may agree to insert a production number and/or confidentiality legend into the footer region of a native format file in order to provide for ease of identification of the source document.

  b. <u>File Naming Convention</u>. The file naming protocol for native files shall be generally, as follows:

    (i) <u>Documents originally produced in Native</u>. If production is made in native format only, a unique Document Number shall be included as part of the file name and the original file name and file extension shall be preserved. The following is an example: <u>Document number – original file name.original extension</u>

    (ii) <u>Documents initially produced in PDF Format</u>. If documents were initially produced in PDF format, and native production is subsequently agreed to, a party shall produce a cross reference table that references the native document to the originally produced PDF document showing the native file extension and the PDF document number, as described in Paragraph D.2.e. of this Protocol.

  c. <u>Protection of Native Production</u>. If Native format documents are

produced, the parties shall produce those documents as "read-only" such that the documents can be reviewed, formulas and data can be reviewed, but neither data nor formulas can be altered.

    4.    **Decryption and Passwords.** If decryption or access passwords are necessary to unlock any electronic document in its native form, including without limitation electronic mail passwords and file decryption passwords, the parties shall meet and confer to develop appropriate steps to allow access to the data without compromising confidentiality, security, or proprietary interests.

    5.    **Other "Office" documents.** If electronic mail, calendars, word processing files, computer presentations (e.g. PowerPoint slides), stand alone spreadsheets (e.g. Excel) containing Discoverable Electronic Information are produced, they shall, in the first instance, be produced in native format pursuant to the provisions of Paragraph D.3. of this Protocol, and, upon request, be produced PDF format...

    6.    **Databases.** If a response to discovery requires production of Discoverable Electronic Information contained in a database, in lieu of producing the database, the responding party shall produce reports from the database. Upon review of the reports, the receiving party may request additional information to explain the database scheme, codes, or abbreviations. The parties agree to meet and confer regarding the requested reports, as necessary.

    7.    **Redaction.** For any file produced in native format that is entitled to be redacted, pursuant to agreement of the parties, applicable law or otherwise by order of the Court, the parties shall meet and confer with respect to suitable techniques and methods of redaction to preserve the integrity of the data while protecting information subject to

privilege or other protections. If a file cannot be redacted prior to production, the parties shall agree to take such other steps as may be necessary to protect the redactable information and prevent unauthorized use or disclosure.

      8.    **Third-Party Software.** If Discoverable Electronic Information produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third party software not in the possession of the requesting party, the producing party shall follow the procedures with respect to Databases described in Paragraph 6 above. The parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of data that requires third party software to access and further seek to attempt to minimize any expenses and burden that may be incurred in obtaining software from any third party. The parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

      9.    **Withholding Production.** Should the producing party withhold any Discoverable Electronic Information based on a claim of privilege, the producing party shall, pursuant to Fed. R. Civ. P. 26 (b)(5) and D. Colo. Local Rules, provide a privilege log containing at least the following information:

    i)    The identity of each document's author, writer, sender;

    ii)    The identity of each document's recipient, addressee, or person for whom it was intended;

    iii)    The date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document;

    iv)    The general subject matter as described on each document, or, if no such description appears, then some other description sufficient to identify the document;

    v)  The basis for any claims(s) of privilege (e.g., attorney-client privilege); and

    vi)  (If produced in PDF or paper format) The number of pages in the document.

  10.  **Privilege and Inadvertent Disclosures.**  The parties intend to enter into a Stipulation and Protective Order Governing the Production and Exchange of Confidential Information or to have a Protective Order apply to commercially sensitive or trade secret information, and further intend that whatever procedure applies to inadvertently produced confidential material would apply to inadvertently produced privileged Discoverable Electronic Information.  Prior to the entry of such stipulation or order, the following procedure will apply. Discoverable Electronic Information that contains privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of inadvertent production by the producing party within thirty days of the discovery.  If more than 30 days have elapsed since production, the party may apply to the Court for the right to have such Discoverable Electronic Information returned.. If a Stipulation and Protective Order Governing the Production and Exchange of Confidential Information in effect for this action, then should any party inadvertently produce Discoverable Electronic Information subject to a claim of privilege, such inadvertent disclosure shall be subject to the provisions governing the same as set forth in the Stipulation and Protective Order Governing the Production and Exchange of Confidential Information.

  11.  **Redaction for Privilege.** Should the producing party redact any document based on a claim of relevance, confidentiality or privilege, the producing party shall make a notation of the redaction and provide a privilege log pursuant to the provisions of

Paragraph D. 9. of this Protocol for any privileged documents.

During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such manner so as to preserve without modification, alteration, or addition the content of such data, including any metadata associated therewith.

12. **Shipping.** All computer media must be properly packaged to ensure safe shipping and handling. The producing party is responsible for the costs of the media on which Discoverable Electronic Information is placed, as well as postage, unless otherwise agreed.  The parties will endeavor to avoid providing any piece of media known to have any physical defect, electronic defect, or damaged data, or is infected with any virus or other harmful software of any kind.  If such is known to exist, but cannot be cured, the media should be clearly labeled so that appropriate care can be taken during its examination. A party should remove any known virus prior to production.

### E.  Metadata, Redaction, Language and Authentication

1. **Metadata.** Where production of metadata is discussed in this Protocol, such reference means metadata as described in this paragraph, only. It is the parties' intent that any request for metadata will be made in good faith.  If production of metadata is agreed to or otherwise ordered by the Court should agreement not be reached, the producing party shall be obligated in the first instance to produce, to the extent that same exists and is available, only the following metadata: original file name, document creation, modification and access dates, when and by whom the document was created, accessed and modified and format information.  After receipt of the foregoing metadata, the receiving party may request additional metadata, including any metadata not

previously produced indicating changes made to the document. The parties shall meet and confer regarding any request for additional metadata, and if agreement cannot be reached regarding production of metadata, the Court shall resolve such dispute. The parties agree that this provision regarding metadata does not modify any party's obligation as required by applicable law to maintain metadata nor does it authorize changes to metadata except as contemplated by the provisions of paragraph D.2.a. of this Protocol

    2.    **Redaction Software.** Upon request and subject to any proprietary restrictions imposed by third party licensors on the disclosure of information, the producing party shall describe the procedures and software used to redact any documents or data existing in electronic form such that the receiving party can identify how information was redacted and can obtain and or evaluate the software.

    3.    **Authentication and Admissibility.** In advance of the exchange of trial exhibits, the parties shall meet and confer to discuss any authentication and admissibility issues with respect to Discoverable Electronic Information.

    4.    **Cooperation.** The parties shall, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of Discoverable Electronic Information, including but not limited to identification of redaction software and procedures, identification of software used in creation of native files, database field definitions and structure or document delivery mechanisms.

    5.    **Variance.** Any practice or procedure set forth herein may be varied by agreement of the parties, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Electronic Information.

6. **Duplicate Production Not Required.** A party producing Discoverable Electronic Information in electronic form need not produce the same document in paper format.

### F. Costs

Generally, the costs of discovery shall be borne by each party. However, any party may apply to the court to apportion the costs of electronic discovery upon a showing of good cause.

### G. Timing and Sequencing of Electronic Discovery

After receiving requests for document production, the parties shall search their documents and produce responsive Discoverable Electronic Information in accordance with Fed.R.Civ.P. 26(b)(2). On-site inspections of electronic media under Fed.R.Civ.P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

### H. Use of Discoverable Electronic Information

The parties agree that they will seek the entry of the same Protocol in the pending action in the Eastern District of New York, and further, regardless of whether the same Protocol is entered, that documents produced in either action shall be deemed produced in both, without the necessity of further production.

SO ORDERED this ____ day of May, 2007.

BY THE COURT:

_____
Craig B. Shaffer
United States Magistrate Judge

DATED at Denver, Colorado, this 14th day of May, 2007.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge