IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No.  07-cv-00514-WDM-CBS

WBS CONNECT, LLC, a Colorado limited liability company,

      Plaintiff,

v.

ONE STEP CONSULTING, INC., a New York corporation, *et al.*,

      Defendants.

---

## ORDER ON MOTION TO REMAND AND
## MOTION TO DISMISS OR STAY OR, IN THE ALTERNATIVE, TO TRANSFER

Miller, J.

      This matter is before me on a Motion to Remand filed by Plaintiff on March ,
2007 (Docket No. 4) and a Motion to Dismiss or Stay or, in the Alternative, to Transfer
filed by Defendants on April 20, 2007 (Docket No. 20).  I have considered the motions,
related briefs, and Complaint and conclude that oral argument is not required.  For the
reasons discussed below, both motions will be denied.

<u>Background</u>

      This action arises from a business relationship between Plaintiff WBS Connect,
LLC (Plaintiff or WBS) and Defendant One Step Consulting, Inc. (One Step).  WBS is a
Colorado limited liability company and One Step is a New York corporation.  Defendant
Charles Gucker is the president and CEO of One Step and a resident of New York.

PDF Final

Defendant Christopher Zydel is also a New York resident and is the principal of a One Step affiliate company. Zydel performed consulting services for WBS through One Step and was engaged in the negotiations to become a one-third equity owner of WBS.

In spring 2005 Plaintiff asked One Step whether it could provide consulting services for Plaintiff. Negotiations regarding the terms of the relationship ensued. Thereafter, Gucker, for One Step, began providing services to Plaintiff in mid-July 2005. The contours of One Step's services are unclear but it appears that One Step designed and engineered the technical product and services that Plaintiff sold to its customers, provided technical support to Plaintiff, and interfaced with Plaintiff's customers regarding technical issues. The parties never executed a written agreement although the terms of the oral agreement do not seem to be materially disputed. Initially the parties agreed that Plaintiff would pay One Step a monthly retainer fee of approximately $3000 to $5000 in exchange for consulting services as needed. The parties dispute whether the amount was increased from $3000 to $5000 after One Step increased services or was originally a range and whether additional work performed by One Step would result in an hourly charge or an increase in the retainer.

In March 2006 Plaintiff's demand for One Step's services increased significantly and Zydel joined Gucker in providing consulting services to Plaintiff. At the same time, the parties further negotiated One Step's compensation. The parties determined that the best way to compensate One Step was through a business partnership whereby Gucker and Zydel, as individuals, would become collective 33% equity owners of

Plaintiff. Plaintiff maintains that, as the specifics of the agreement were still under negotiation, the parties entered into an interim oral agreement whereby Plaintiff would pay One Step one third of Plaintiff's revenues but not less than $25,000 per month. Defendants allege that this agreement was based on Gucker and Zydel's one-third ownership interest in Plaintiff rather than an interim plan during negotiations. Regardless, Plaintiff paid One Step $25,000 per month from April 2006 through February 2007.

The parties continued to negotiate the exact terms of the ownership agreement including details about profit sharing, the WBS operating agreement, and cost expenditures. Plaintiff alleges that the negotiations reached an impasse in February 2007 and it subsequently filed this declaratory judgment suit on March 1, 2007 in District Court, City and County of Denver, Colorado (Colorado action). Defendants allege that the first time they realized that the negotiations were not progressing was when Plaintiff notified them by letter dated March 2, 2007 that it had filed a declaratory judgment suit and terminated the parties' consulting services agreement. In addition to filing a notice of removal on March 14, 2007 for the Colorado action based on diversity jurisdiction, Defendants also brought suit in Supreme Court, Nassau County, New York on March 5, 2007 (New York action) seeking, *inter alia*, a one-third equity interest in WBS or $2.5 million in compensation. Plaintiff removed the New York action to the District Court for the Eastern District of New York on March 16, 2007 based on diversity jurisdiction.

Discussion

I.    Motion to Remand

Plaintiff argues that this Court should remand the Colorado action to the District Court, City of County of Denver, Colorado because this Court lacks subject matter jurisdiction over the action.  Plaintiff argues that the amount in controversy does not exceed the jurisdictional requirement.  Defendants argue that the amount in controversy is $2.5 million, well beyond the $75,000 requirement and this amount is evidenced in the complaint.

For a case to be removable, the federal court must have jurisdiction.  *See* 28 U.S.C. § 1441(a) (addressing actions for removal to federal court).  Because this action was removed based on diversity jurisdiction, this Court has jurisdiction if the "matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs" and the parties are diverse.  *Id.* § 1332.  "In cases seeking declaratory and injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  In these actions, the Tenth Circuit follows the "either viewpoint rule" under which the amount in controversy is determined by "either the value to the plaintiff or the cost to the defendant of injunctive and declaratory relief."  *Id.* (citing *Justice v. Atchison, Topeka and Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir. 1991)).  Defendants bear the burden of establishing that the requirements for diversity jurisdiction have been met.  *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citing *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999)).  "'[T]he amount in

controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal.'" *Id.* (quoting *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)).  When the complaint itself does not set forth the amount of damages, the defendant must establish the amount in controversy by a preponderance of the evidence.  *Id.* (citations omitted).  Defendants must set forth in the notice of removal the "underlying facts" that demonstrate that the amount in controversy is greater than $75,000.  *Laughlin*, 50 F.3d at 873.

Plaintiff argues that Defendants have not met their burden of demonstrating jurisdiction because the complaint merely asks for a judgment that Plaintiff has fully compensated Defendants and Defendants have not alleged specific facts in the notice of removal to support their claim for $2.5 million in compensation.  Defendants allege that the complaint establishes the amount because the facts recited in the complaint include a reference to the $2.5 million that Defendant's claim they are owed.  I agree with Defendants.

Because this is an action for declaratory relief, the amount in controversy is measured by "either the value to the plaintiff or the cost to the defendant." *Lovell*, 466 F.3d at 897 (citing *Justice*, 927 F.2d at 505).  In this case, the value to the plaintiff and potential cost to the defendant is explicitly stated in the complaint.  The complaint states that Defendants claim they are "entitled to additional compensation in the amount of approximately $2.5 million for services previously provided."  (Compl. ¶ 14.) Although the claims for declaratory relief do not expressly reference the $2.5 million, Plaintiff does seek a judgment that "the defendants have been fully compensated for

the services that the defendants provided to [Plaintiff] . . . and are not entitled to additional compensation for services provided." Not only is this a direct rebuttal of Defendants' claim that they are owed $2.5 million, but the facts alleged in the complaint, including Defendants' $2.5 million claim, are expressly incorporated into the claims for declaratory relief. Therefore, because the amount in controversy is determined by the complaint, I need not look to the notice of removal to determine if Defendants have demonstrated the amount in controversy by a preponderance of the evidence. *See Martin*, 251 F.3d at 1290 (citing *Laughlin*, 50 F.3d at 873).[1] Therefore, this Court has diversity jurisdiction and remand is not proper because the parties are diverse and the complaint shows that the amount in controversy is greater than $75,000.

II.    Motion to Dismiss or Stay or, in the Alternative, Transfer

       *A.    Personal Jurisdiction*

       Defendants argue that this Court does not have personal jurisdiction over them because they do not have sufficient minimum contacts with Colorado, the forum state, to satisfy the constitutional requirements set forth in *International Shoe v. Washington*. 326 U.S. 310, 316 (1945) ("[D]ue process requires . . . [a defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offence 'traditional notions of fair play and substantial justice.'" (quoting *Milliken v. Meyer*, 311 U.S. 427, 463 (1940))). Plaintiff responds that Defendants have engaged

---

       [1] Plaintiff's argument that Defendants have failed to allege any specific facts showing the amount in controversy in the notice of removal is without merit as it ignores the fact that the complaint itself sets forth the amount in controversy.

in extensive business dealings with a Colorado corporation and, therefore, jurisdiction is proper. I agree with Plaintiff.

The burden to demonstrate jurisdiction over each defendant is on plaintiff. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Rambo v. Am. Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)). When the district court does not hold an evidentiary hearing before ruling on diversity jurisdiction, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion" to dismiss. *Id.* (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)). The plaintiff may make this showing by alleging facts, in affidavit or other written form, that, if true, would support a finding of jurisdiction. *Id.* Then, the burden shifts to the defendant to "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 477 (1984)).

Personal jurisdiction requires the plaintiff to show that jurisdiction is proper "under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)) (internal quotations omitted). "'Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause. Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant.'" *Id.* (quoting

*Day v. Snowmass Stables, Inc.*, 810 F.Supp. 289, 291 (D. Colo. 1993) (citation omitted)). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Benton*, 375 F.3d at 1075 (quoting *Milliken*, 311 U.S. at 463). The "minimum contacts" standard may be met by showing either general or specific jurisdiction over the defendant. *See OMI Holdings*, 149 F.3d at 1090–91. A court may assert general jurisdiction over a defendant for any claim, whether arising from activities in the state or not, if the defendant has "continuous and systematic general business contacts" with the forum state. *Id.* (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 53.0, 567 (2d Cir. 1996)). A court may assert specific jurisdiction over a defendant when the "defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King*, 471 U.S. at 472).

The determination of specific personal jurisdiction is a two-pronged analysis. *Benton*, 375 F.3d at 1075. First, I must decide whether the person has "such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *OMI Holdings*, 149 F.3d at 1090 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1979)). This prong requires me to determine "whether the defendant purposefully directed its activities at residents of the forum." *Id.* (citing *Burger King*, 471 U.S. at 472. Additionally, the first prong requires a determination

whether the action "arise[s] out of or relate[s] to," *id.* (citing *Burger King*, 471 U.S. at 472), the defendant's own activities "that create a substantial connection with the forum state." *Id.* (citing *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987)). A contract between a nonresident and a resident is, alone, insufficient to establish sufficient minimum contacts with the forum state. *Benton*, 375 F.3d at 1077 (citing *Burger King*, 471 U.S. at 473). But, when a nonresident defendant "create[s] continuing relationships and obligations" with a resident of the forum state, the defendant becomes "subject to regulation and sanctions in the [forum state] for the consequences of their activities." *Id.* (quoting *Burger King*, 471 U.S. at 473) (internal quotations omitted). When parties from different states have entered into a contract, the relevant factors for determining minimum contacts "include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 473).

The second prong of the specific personal jurisdiction analysis is "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 113). This inquiry "requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Id.* (citing *Asahi Metal*, 480 U.S. at 113). In making this determination, courts consider:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1095 (citing *Asahi*, 480 U.S. at 113).   There is an interplay between the two prongs such that the stronger one prong is the less strong the other prong must be to assert personal jurisdiction over the defendant.   *Id.* at 1092 (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

In this case, because I am not conducting an evidentiary hearing, Plaintiff need only allege facts sufficient to support a prima facie showing of personal jurisdiction. *See OMI Holdings*, 149 F.3d at 1091 (citing *Kuenzle*, 102 F.3d at 456).  Plaintiff has alleged, through a declaration, that Defendant One Step entered into and acted upon an oral agreement with Plaintiff whereby Defendants Gucker and Zydel provided consulting services to Plaintiff over a period of approximately twenty months.  As part of that business relationship, One Step assisted Plaintiff with its sales and provided sales support, engineering support, and service fulfillment to Plaintiff's customers.  Plaintiff alleges that One Step, Gucker, and Zydel interacted with customers located throughout the country, including Denver, through technical support and sales calls.  Plaintiff also contends that Defendants Gucker and Zydel were authorized purchasing agents for Plaintiff, meaning that they were authorized to make purchases from Plaintiff's vendors for the benefit of Plaintiff and its customers.  Furthermore, Gucker and Zydel were authorized users of Plaintiff's American Express account and actually used the credit cards to purchase office and computer equipment.  Finally, Plaintiff contends that Gucker and Zydel were engaged in ongoing negotiations regarding obtaining an

ownership interest in WBS. These negotiations included discussions regarding WBS's operating agreement, participation in weekly telephone meetings regarding the day-to-day business operations of WBS.

Analyzing these facts under the two-pronged specific personal jurisdiction analysis, I find that Plaintiff has alleged sufficient facts to make a prima facie showing of personal jurisdiction over Defendants by demonstrating that Defendants have "such minimum contacts with [Colorado] that [they] should reasonably anticipate being haled into court'" here.[2] *OMI Holdings*, 149 F.3d at 1090 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). With respect to the first prong of the analysis, although a contract alone is insufficient to establish the necessary minimum contacts, a business relationship that "create[s] continuing relationships and obligations" is sufficient. *See Benton*, 375 F.3d at 1077 (quoting *Burger King*, 471 U.S. at 473). Plaintiff has alleged that Defendant One Step was engaged in an ongoing business relationship whereby One Step, Gucker, and eventually Zydel were active participants in the business of WBS for approximately twenty months. Although there was not a formally executed written agreement establishing the terms of the relationship, the actual course of dealing that Plaintiff alleges demonstrates a substantial interaction by all Defendants in the operations of WBS including sales calls, customer technical support, purchasing equipment, and negotiating the operating agreement. The negotiation period also

---

[2] Plaintiff's response to the motion to dismiss does not appear to allege that this Court has general jurisdiction over Defendants. For that reason and because I find that this Court has specific jurisdiction over Defendants, I do not analyze general jurisdiction.

demonstrates contacts with Colorado stronger than a mere contract: the parties negotiated for a substantial amount of time prior to beginning their relationship in July 2005 and then engaged in further substantial negotiations in 2006–07 about Gucker and Zydel obtaining an ownership interest in WBS.  Furthermore, the anticipated consequence of these negotiations was that Gucker and Zydel would become owners of a Colorado company.  Therefore, Plaintiffs allegations show that the relationship between One Step and Plaintiff was much more than a mere contract; it was an ongoing business relationship where the end result was expected to be a joint business venture in a Colorado company.  Finally, this litigation arises out of the activities of Defendants in Colorado; indeed, this action is essentially about the terms of the business relationship between the parties.  Plaintiff has demonstrated that Defendants have sufficient minimum contacts with Colorado.

With respect to the second prong, whether asserting personal jurisdiction over Defendants "offends traditional notions of fair play and substantial justice," I conclude that it is reasonable to assert personal jurisdiction over Defendants in light of all the circumstances.  *See Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).  Consideration of the factors set forth in *OMI Holdings*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113), demonstrate that it is reasonable to assert jurisdiction over the Defendants:

1.      Burden on Defendants of litigating in Colorado

Although this factor is not dispositive, it is very important in determining whether asserting personal jurisdiction over a defendant violates due process.  *OMI Holdings*,

149 F.3d at 1096 (citing *World-Wide Volkswagen*, 444 U.S. at 292). In this case, the burden on Defendants is significant; therefore, the factor weighs against asserting jurisdiction. Defendants have no office or property located in Colorado, are not licensed to do business in Colorado, and employ no one in Colorado. Indeed, their only connection to Colorado appears to be through Plaintiff.

2.     Forum state's interest in adjudicating the dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* (citing *Burger King*, 471 U.S. at 483). This interest is also "implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* (citing *Asahi*, 480 U.S. at 115). This factor weighs slightly in favor of jurisdiction because Colorado has an interest in providing a forum for a Colorado limited liability company to redress its injuries. What law governs the action is disputed.[3] However, I must take Plaintiff's asserted facts as true when determining if Plaintiff has presented a prima facie case for jurisdiction. *See id.* at 1091. Therefore, this factor weighs in favor of asserting jurisdiction.

3.     Plaintiff's interest in convenient and effective relief

This factor

hinges on whether Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in a [sic] another

---

[3] Defendants argue that New York law governs the dispute as was called for in the original contract. That agreement, however, was never executed. Plaintiff claims that Colorado law governs the dispute because Colorado law governs a Colorado limited liability company and its members. This argument, however, does not directly address which states law will apply to this dispute.

forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.

*Id.* at 1097. Although Plaintiff alleges that it would be difficult to litigate the dispute in New York because Plaintiff's managing partners and witnesses are in Colorado, they have failed to demonstrate the degree of burden that is "so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* Therefore, this factor weighs against finding jurisdiction.

      4.      Interstate judicial system's interest in obtaining efficient resolution

The fourth factor in the reasonableness inquiry asks "whether the forum state is the most efficient place to litigate the dispute." *OMI Holdings*, 149 F.3d at 1097. This inquiry takes into consideration the location of relevant witnesses, where the alleged wrong occurred, what forum's substantive law governs the dispute, and "whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* Plaintiff alleges that the witnesses are in Colorado, Colorado law applies, and the alleged wrong occurred in Colorado as a Colorado company was the object of the dispute. However, Plaintiff does not address the issue of piecemeal litigation. Defendants argue that if this case is allowed to proceed, there will be parallel cases here and in New York and that the Colorado action will not resolve all of the issues between the parties.

The issue of piecemeal litigation implicates the declaratory judgment nature of this case; therefore, I find it prudent to discuss some of Defendants' declaratory judgment arguments here. Defendants argue that even after resolution of this declaratory action, the New York action will have to proceed to resolve additional

issues of fraud, amount of damages, and whether to impose a constructive trust.

Plaintiff, however, argues that all of the claims in the New York action are compulsory

counterclaims in this litigation and Colorado has an equal or greater interest in

resolving the dispute. I conclude that this factor weighs slightly in favor of jurisdiction

because Colorado has an interest in resolving this dispute, the alleged wrong occurred

in Colorado (relating to the services provided to a Colorado company), and Plaintiff has

alleged that relevant witnesses and materials are located in Colorado. Although there

may be a danger of piecemeal litigation, I do not think that denying jurisdiction is

necessary to prevent it as Defendants may counterclaim in this suit. I also note that the

Colorado action was the first filed, entitling it to priority in resolving the dispute.[4] *See*

*Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) ("[T]he

general rule that when two courts have concurrent jurisdiction, the first court in which

jurisdiction attaches has priority to consider the case."); *Cessna Aircraft Co. v. Brown*,

348 F.2d 689, 692 (10th Cir. 1965) ("[T]he first federal district court which obtains

jurisdiction of parties and issues should have priority and the second court should

decline consideration of the action." (citing *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d

43, 45 (2d Cir. 1961))). The first filed rule is appropriate because the "simultaneous

prosecution in two different courts of cases relating to the same parties and issues

'leads to the wastefulness of time, energy and money.'" *Cessna Aircraft*, 348 F.2d at

692 (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

---

[4] Although the Colorado action seeks declaratory relief, the parties have not provided nor am I aware of any case law that holds that the first filed rule does not apply to declaratory actions.

### 5. States' interest in furthering fundamental social policies

The fifth factor relates to "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1097. Specifically, the factor asks "whether the exercise of personal jurisdiction by [Colorado] affects the substantive social policy interests of other states or foreign nations." *Id.* This factor weighs in favor of jurisdiction because Colorado's exercise of jurisdiction would not affect any social policies of New York.

The reasonableness factors are relatively even between asserting jurisdiction and declining jurisdiction. In light of all the factors and because Plaintiff has made a fairly strong showing of minimum contacts, I conclude that asserting personal jurisdiction over One Step, Gucker, and Zydel does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). Therefore, personal jurisdiction over Defendants is proper.

As Plaintiff has demonstrated a prima facie case for specific personal jurisdiction over each Defendant, the burden now shifts to Defendants to show "a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 477). First, Defendants argue that because they did not actually physically conduct their activities with regard to WBS in Colorado, they cannot be subjected to Colorado's jurisdiction. However, the inquiry is not physical presence, but rather is whether or not Defendants purposefully directed their activities at residents of Colorado. As discussed above, I conclude that each Defendant did so direct their activities. In particular, I note

that Defendants sought an ownership interest in a Colorado company, an interest that would certainly subject Defendants to Colorado's jurisdiction; where Defendants were located when they sought this interest is irrelevant. Defendants further argue that the business relationship does not demonstrate specific personal jurisdiction over Gucker and Zydel because all their activities were conducted through One Step. I disagree. Although much of the business relationship was conducted through One Step, both Gucker and Zydel were negotiating to become individual co-owners of WBS. This fact is sufficient to demonstrate that Gucker and Zydel, as individuals, purposefully directed their activities at Colorado. Finally, Defendants argue that there it would be unreasonable to assert personal jurisdiction over them because the action is a declaratory judgment action. As discussed above, I do not think this causes Colorado's exercise of jurisdiction to be unreasonable.

B.    *Declaratory Judgment Discretion*

Defendants urge me to exercise my discretion and decline jurisdiction over this declaratory judgment action. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[5] *Wilton v.*

---

[5] I apply federal law governing discretion in entertaining declaratory judgment actions even though the action was originally brought under a state declaratory judgment statute and removed to federal court based on diversity because the discretion to entertain a declaratory judgment action is procedural. *See Md. Casualty Co v. Boyle Const. Co.*, 123 F.2d 558, 565 (4th Cir. 1941) (noting that the "federal declaratory judgment act is an important development in procedural law"); *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) (announcing discretionary standard in a diversity action); *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F.Supp.2d 669, 672 (D. Md. 2002) ("The Declaratory Judgment Act

*Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see Qwest Comm'n Int'l, Inc. v. Thomas*, 52 F.Supp.2d 1200 (D. Colo. 1999) (declining to retain jurisdiction in a declaratory judgment action).  When making such a discretionary determination, the "district court should examine 'the scope of the pending state court proceeding and the nature of the defenses open there.'" *Wilton*, 515 U.S. at 283 (citing *Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491, 495 (1942)).  In particular, the district court should examine "'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.'" *Id.* (citing *Brillhart*, 316 U.S. at 495).  The Tenth Circuit requires consideration of various factors when determining whether or not to hear a declaratory judgment:

> [1] whether a declaratory judgment would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*St. Paul Fire*, 53 F.3d at 1169.  The more stringent discretionary standard that Plaintiff asserts, set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), is not applicable to cases brought under the Declaratory Judgment Act.  *Wilton*, 515 U.S. at 286 ("Distinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment

---

is a procedural statute that creates no substantive rights" (citing *Bourazak v. N. River Ins. Co*, 379 f.2d 530, 533 (7th Cir. 1967))).

actions than that permitted under the 'exceptional circumstances' test of *Colorado River. . . .*").

In this case, although not addressing all the relevant factors under *St. Paul Fire*, Defendants urge that I decline jurisdiction because this action will not resolve Defendants' claim for fraud, the amount of compensation, if any, owed to Defendants or whether to impose a constructive trust. Further, Defendants argue that this action is mere "procedural fencing" weighing towards declining jurisdiction.[6] After weighing all the *St. Paul Fire* factors, I conclude that it is appropriate for me to retain jurisdiction over this case. Although resolution of this action as it stands now will not settle the entire controversy between the parties, Defendants may still assert any counterclaims that they may have as they have not yet filed an answer in this action. Therefore, I do not find it persuasive that there are additional claims pending in the New York action. Furthermore, I think that this action will be useful in clarifying the legal relations between the parties and that Colorado is just as efficient a forum to resolve the dispute as New York is. I also note again that the Colorado action was filed before the New York action and, therefore, is entitled to priority. *See Hospah*, 673 F.2d at 1163 ("[T]he general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."); *Cessna Aircraft*, 348 F.2d at 692 ("[T]he first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action."

---

[6] Plaintiff's argument that I should entertain this action is based on an inappropriate standard set forth in *Colorado River*. Therefore, I do not include Plaintiff's argument in my analysis.

(citing *Nat'l Equip. Rental*, 287 F.2d at 45)). The fourth factor in the analysis is inapplicable here as the parallel action is also in federal district court.

Finally, I do not agree with Defendants that Plaintiff engaged in procedural fencing in this case to a degree that persuades me to decline jurisdiction. There was no evidence in this case, as there was in *St. Paul Fire* and *Qwest*, that Plaintiff was on notice that Defendants were going to file a claim by a certain date and preemptively filed a declaratory judgment action before that date. Here, Plaintiff merely filed a declaratory judgment action when they viewed the negotiations at a standstill. Therefore, I do not decline jurisdiction over the Colorado action.

     C.    *Transfer*

Defendants move to transfer this case to New York based on the convenience of the parties. In support of this motion, Defendants argue that their witnesses would be inconvenienced by a trial in Colorado, that documents are located in New York, and that Colorado does not have jurisdiction over Defendants. Plaintiff argues that many witnesses are located in Colorado and will be inconvenienced by a trial in New York, that there are just as many relevant documents located in Colorado as there are in New York, and, generally, that its choice of forum should be given deference.

28 U.S.C. § 1404(a) permits me, in my discretion, to transfer this case to another district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]"  There is a "strong presumption in favor of . . . the plaintiff's chosen forum." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The

"presumption is overcome 'only when the private and public interest factors clearly point towards trial in the alternative forum.'" *Id.* (citing *Piper Aircraft Co.*, 454 U.S. at 255). Defendants bear the burden of showing the Plaintiff's chosen forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Shifting the inconvenience from defendants to plaintiff, by itself, is not a permissible justification for granting the motion. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992). The factors relevant to my resolution of the motion to transfer are set forth in *Texas Gulf Sulpher Co. v. Ritter*:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

371 F.2d 145, 147 (10th Cir. 1967).

In this case, I do not think that Defendants have overcome the presumption in favor of the Plaintiff's choice of forum. Defendants have merely argued that it would be more convenient for them to litigate the dispute in New York and that Colorado does not have personal jurisdiction over Defendants. However, shifting the convenience from one side to another is not a sufficient reason for transfer. Furthermore, as discussed above, Colorado does have personal jurisdiction over Defendants. Therefore, Defendants motion to transfer shall be denied.

*D. Stay*

Finally, Defendants argue that the Colorado action should be stayed pending resolution of the New York action. They do not, however, provide any argument or support for this motion. As the first to file rule provides that "the first federal district court which obtains jurisdiction of the parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated," I decline to grant a stay in these proceedings.

Accordingly, it is ordered:

1.      Plaintiff's Motion to Remand filed on March 19, 2007 (Docket No. 4) is denied.

2.      Defendants' Motion to Dismiss or Stay or, in the Alternative, to Transfer filed on April 20, 2007 (Docket No. 20) is denied.


DATED at Denver, Colorado, on November 30, 2007.

                                        BY THE COURT:


                                        s/ Walker D. Miller
                                        United States District Judge